IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DWAYNE STAATS, et al., | : |
| Plaintiffs, | : |
| v. | : Civ. No. 19-101-LPS |
| COMMISSIONER PERRY PHELPS, et al., | : |
| Defendants. | : |

Dwayne Staats, SCI Albion, Albion, Pennsylvania; Jarreau A. Ayers, SCI Huntingdon, Huntingdon, Pennsylvania; Roman Shankaras, Wilmington, Delaware; Lawrence Michaels, Sussex Correctional Institution, Georgetown, Delaware; and Abdul Haqq el-quadeer, James T. Vaughn Correctional Center, Smyrna, Delaware.

Pro Se Plaintiffs.

**MEMORANDUM OPINION**

September 16, 2019
Wilmington, Delaware

[signature]

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiffs,[1] all current or former inmates at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, commenced this action on January 17, 2019, pursuant to 42 U.S.C. § 1983.[2] (D.I. 1) They also raise supplemental claims under Delaware law. Plaintiffs appear *pro se*. Plaintiff Dwayne Staats ("Staats") paid the filing fee in full on February 4, 2019.[3] Plaintiffs Jarreau A. Ayers ("Ayers"), Roman Shankaras ("Shankaras"), Lawrence Michaels ("Michaels"), and Abdul Haqq el-quadeer ("Haqq"), sought and were granted leave to proceed *in forma pauperis*. (D.I. 14, 32, 40, 49) Staats, Shankaras, and Ayers request counsel. (D.I. 3, 22, 48) Shankaras has filed two motions for leave to amend. (D.I. 20, 37) Non-party Nina Shahin ("Shahin") moves to join as a plaintiff in the case. (D.I. 7) The Court proceeds to review and screen the matter pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(a).

## II. BACKGROUND

As has been widely reported, on February 2, 2017, there was a prison uprising in the C-Building at the JTVCC that resulted in the death of correctional officer Lt. Steven Floyd ("Floyd"). At the time, Defendant David Pierce ("Pierce") was the JTVCC warden. Each Plaintiff was criminally charged in the prison uprising. (D.I. 3) Plaintiffs allege that prior to the uprising, abuses

---

[1] Plaintiffs Kevin Berry ("Berry"), Obadiah Miller ("Miller"), John Bramble ("Bramble"), and Abednego Baynes ("Baynes") have all been dismissed. The Court will not discuss claims raised by these former Plaintiffs. (*See* D.I. 4, 14)

[2] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[3] Section 1915A(b)(1) is applicable to all prisoner lawsuits regardless of whether the litigant paid the fee all at once or in installments. *Stringer v. Bureau of Prisons, Federal Agency*, 145 F. App'x 751, 752 (3d Cir. Aug. 23, 2005).

1

and other problems in general occurred at the JTVCC and the Delaware Department of Correction ("DOC"), including: (1) the adversarial culture at the JTVCC was not conducive to a safe facility; (2) policies and procedures were inconsistently applied, if applied at all; (3) poor medical/mental health treatment; (4) lack of supervision/response to violence; (5) dysfunctional grievance system; and (6) limited access to rehabilitation programs. (D.I. 1 at 7) Plaintiffs allege that following the uprising, abuse and mistreatment of inmates included: (1) unwarranted punching, kicking, pepper spraying, and baton striking by Delaware and Maryland State Police, JTVCC correctional officers, and CERT (i.e., "Correction Emergency Response Team") teams; (2) continued abuse by JTVCC correctional officers; (3) destruction and disposal of personal property; (4) inadequate/non-existent medical attention for injuries sustained after the breach of C-Building; (5) derogatory and abusive language directed towards inmates by DOC staff; (6) continued lack of adequate medical and mental health care; (7) non-responsive and ineffective grievance systems for medical and other grievances; (8) inadequate/non-existent medical attention; (9) extremely limited recreation time; (10) mail tampering at the JTVCC and the Sussex Correctional Institution ("SCI") in Georgetown, Delaware; and (11) disregard for the overall well-being of prisoners.

The Complaint contains four counts. Count I alleges a § 1983 excessive force claim and an assault and battery claim under Delaware law. Count II alleges a § 1983 medical needs claim and a medical negligence claim under Delaware law. Count III raises a claim for lost property. Count IV raises an exhaustion of legal remedies claim because all Plaintiffs were prohibited from submitting grievances or sick call slips until three weeks after the uprising. Plaintiffs seek declaratory and injunctive relief as well as compensatory and punitive damages. (*Id.* at 15-16)

## III.  LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiffs proceed *pro se*, their pleading is liberally construed and their Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state claim under § 1915(e)(2)(B)). However, before

3

dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant a plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 679

4

(citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Count I: Assault by CERT Team

Count I alleges "assaults by CERT Team" when, on February 2, 2017, a combination of Delaware and Maryland State Police as well as DOC correction officers and the DOC CERT Team, all of whom were dressed in riot gear, entered the C-Building. (D.I. 1 at 9) They ordered all inmates to return to their cells and lie on the ground with their hands behind their backs. The officers zip-tied the inmates' hands and pulled them as tight as possible. (*Id.*) Plaintiffs allege they offered no resistance yet, while restrained, they were kicked, kneed, punched, and sprayed with capstun, and suffered injuries. (*Id.* at 9-10) Plaintiffs allege that, next, they were forced to lie in pools of their blood on freezing cement for hours. (*Id.* at 10) They were taken to the infirmary where, they allege, the received inadequate medical care, none of their injuries were assessed, and nothing was documented. (*Id.*) That day, Plaintiffs were also sent to the segregated housing units. (*Id.* at 11) Plaintiffs allege the CERT Team maliciously and sadistically used physical force against them while they were restrained in violation of the Eighth Amendment and the CERT Team committed assault and battery under Delaware law. (*Id.*)

Liberally construing Count I, it appears to state excessive force claims arising under the Eighth Amendment and assault and battery claims under Delaware law. Count I specifically refers to the CERT Team, a named defendant. The CERT Team, however, is not a person, as is required for a § 1983 claim. To state a viable § 1983 claim, a plaintiff must allege facts showing a deprivation of a constitutional right, privilege, or immunity by a person acting under color of state law. *See*

5

*Daniels v. Williams*, 474 U.S. 327, 330 (1986). The claim against the CERT Team is not cognizable as it is not raised against a "person" acting under color of state law.

No other Defendants are named in Count I, although later in the Complaint (in a separate section "Claims for Relief") Plaintiffs refer to Defendants former DOC Commissioner Perry Phelps ("Phelps"), Deputy Warden Parker ("Parker"), Deputy Warder James Scarborough ("Scarborough"), and Major Jeffery Carrothers ("Carrothers") and their alleged failures to intervene in the use of force by the CERT Team. (*See* D.I. 1 at ¶ 51) A corrections officer's failure to intervene in a beating can be the basis of liability under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Here, however, the failure to intervene claim is conclusory, as the Complaint contains no facts to support such claims against supervisory Defendants Phelps, Parker, Scarborough, and Carrothers.

As pled, Count I fails to state a claim upon which relief may be granted. It will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Plaintiffs will be given leave to amend Count I to clarify their claims against Defendants or other individuals, who may include individual CERT Team members.

### B. Count II: Denial of Medical Care

Count II alleges that upon their transfer to the segregated housing unit, medical staff notified Plaintiffs that no sick call slips were to be submitted for three weeks. (D.I. 1 at ¶ 37) Plaintiffs allege that it is "plausible that these decisions to deny proper medical examinations and requests were authorized or supported by Phelps, Parker, and DOC medical provider, Defendant Connections ("Connections"). (*Id.* at ¶ 38) Plaintiffs allege that Connections failed to provide adequate medical examinations after the February 2, 2019 assaults, in violation of the Eighth Amendment, and that it was negligent under Delaware law. (*Id.* at ¶ 54)

6

Count II contains a specific claim on behalf of Ayers. It alleges that in September 2016, while housed at the JTVCC, Ayers injured his knee, and Defendant Sergeant Cupid ("Cupid") saw that Ayers could not walk without assistance from other inmates; still, Cupid refused to call medical for Ayers. (*Id.* at ¶¶ 39, 40) Ayers was scheduled to undergo knee surgery in May 2017, but the surgery never took place. (*Id.* at ¶ 41) The informal resolution of a grievance submitted by Ayers, dated July 16, 2017, indicates the surgery was canceled while Ayers was housed at the JTVCC and that the consult coordinator was waiting for further direction. (D.I. 1-1 at 39) Ayers alleges that in May 2018, having been transferred to the SCI, he was notified by medical personnel that his surgery had been denied due to security restrictions. (*Id.* at ¶ 42) Defendant Robert May ("May") was the SCI warden when Ayers was told this about the denial of the surgery. (*Id.*) Ayers alleges that Cupid denied him medical care in violation of the Eighth Amendment and May's lack of oversight and supervision caused the failure to intervene to prevent abuse of authority by staff and administration at the SCI, all of which also violated the Eighth Amendment. (*Id.* D.I. 1 at ¶¶ 52, 55)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). To set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *See id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05. The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but

7

intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

### 1. Deficient Pleading

Other than Ayers, Count II does not allege that any Plaintiff has a serious medical need. In addition, Count II does not identify the medical staff who allegedly told Plaintiffs that they could not submit sick call slips. Nor does it contain facts to support the conclusory allegations that Phelps, Scarborough, Parker, and Connections authorized or supported the decision to deny medical examinations and requests. Finally, with regard to Connections, there are no allegations of a relevant Connections policy or custom that caused the constitutional violations Plaintiffs allege. *See Natale v. Camden Cty. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be basis for liability under 42 U.S.C. § 1983, corporation under contract with State cannot be held liable for the acts of its employees and agents under those theories).

As pled, Count II fails to state a claim upon which relief may be granted. It will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Plaintiffs will be given leave to amend the Count II.

### 2. Ayers Claim

Following a thorough review of the allegations raised on behalf of Ayers, the Court concludes that Ayers' medical needs claim is improperly joined. Pursuant to Fed. R. Civ. P. Rule 20(a), Plaintiffs may file a joint action if: (1) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action.

8

Ayers' claim is raised solely on his behalf and against two Defendants, May and Cupid, who are not named in any other claim or by any other Plaintiff. In addition, it appears that the claim against Cupid accrued in 2016 and is barred by the applicable statute of limitations. For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions and, in Delaware, are subject to a two year limitations period. *See Wilson v. Garcia*, 471 U.S. 261, 275 (1983); 10 Del. C. § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Finally, the claim against May fails for lack of personal involvement, as there are no allegations he had anything to do with the cancellation of the May 2017 surgery. An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Therefore, Ayers' claim will be dismissed as frivolous pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1). May and Cupid will be dismissed as defendants.

### 3. Medical Negligence

The Complaint refers to "medical negligence." In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act, 18 Del. C. § 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony, detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *See Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (citing *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001) (internal quotations omitted)); 18 Del. C. §6853. Because Plaintiffs allege medical negligence, they were required to submit an affidavit of merit as to each defendant signed by an expert witness. *See* 18 Del. C. § 6853(a)(1). Plaintiffs failed to accompany the Complaint with an affidavit of merit as required by 18 Del. C. § 6853(a)(1). Accordingly the medical negligence claim will be dismissed.

9

## C. Count III: Lost Property

Count III raises a claim for lost property. Plaintiffs allege that following the February 2017 prison uprising, none of them received their personal property that was taken after officers breached and secured the building and obtained search warrants for specific cells. (D.I. 1 at ¶¶ 43, 44) Plaintiffs allege their property was deliberately destroyed or thrown away by the CERT Team. (*Id.* at ¶ 45) Plaintiffs alleges that Phelps, Parker, and Scarborough would have been "part of the decision to discard all property regardless of its condition." (*Id.*)

A due process claim based on the deprivation of personal property is not actionable under § 1983 unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor*, 451 U.S. 527, 542 (1981), *overruled on other grounds* by 474 U.S. 327 (1986)); *Harris v. McMullen*, 609 F. App'x 704, 705 (3d Cir. Mar. 19, 2015). Because Delaware provides an adequate remedy, i.e., the opportunity to file a common law claim for conversion of property, Plaintiffs cannot maintain a cause of action pursuant to § 1983. Count III is subject to summary dismissal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## D. Count IV: Exhaustion of Legal Remedies

Count IV states that all Plaintiffs were prohibited from submitting grievances or sick call slips until three weeks after the uprising. (D.I. 47 at ¶ 47) Plaintiffs allege the restriction was strategically implemented so that the seven-day time limit to submit a grievance would expire. (*Id.* at ¶ 48)

The filing of prison grievances is a constitutionally protected activity. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. Nov. 7, 2006). To the extent Plaintiffs base their claims upon their dissatisfaction with the grievance procedure or denial of grievances, the claims fail because an inmate does not have a "free-standing constitutional right to an effective grievance process." *Woods*

*v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. Aug. 18, 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). To the extent Plaintiffs raise the claim in anticipation of an assertion that they failed to exhaust their administrative remedies as required by the Prison Litigation Reform Act, the issue will be addressed should it be raised by Defendants in a dispositive motion. Count IV will be dismissed as it raises a non-cognizable claim.

## V. MOTIONS

### A. Request for Counsel

Staats, Shankaras, and Ayers have each filed requests for counsel. (D.I. 3, 22, 48) Staats requests counsel on behalf of all Plaintiffs, on the grounds that their imprisonment greatly limits their ability to litigate, the issues are complex and will require significant research and investigation, law library access is limited, there will be conflicting trial testimony, counsel will better enable Plaintiffs to present evidence and cross-examine witnesses, and Plaintiffs were originally represented by counsel but the representation was withdrawn after Plaintiffs were charged criminally following the February 2017 prison uprising. (D.I. 3)

Shankaras was incarcerated at the time he filed his request for counsel. He has since been released. He requests counsel on his behalf and on behalf of Staats on the grounds that they cannot afford counsel, the issues are complex, Plaintiffs are housed in segregation and have limited law library access, they are no longer housed in the same correctional facility (with some inmates in Pennsylvania and some in Delaware), he has unsuccessfully sought to retain counsel, and Plaintiffs have limited knowledge of the law. (D.I. 22) Finally, Ayers recently filed a request for counsel on the grounds that he is unable to afford counsel, he has been transferred to Pennsylvania, he is housed in a restricted housing unit and has limited law library access and assistance, and he requires reconstructive knee surgery. (D.I. 48)

11

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel. *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *See Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court considers a number of factors when assessing a request for counsel. These include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

The Court first observes that, while Staats proceeds *pro se*, he has not sought *in forma pauperis* status. Pursuant to 28 U.S.C. § 1915(e)(1), the Court may request an attorney to represent any person unable to afford counsel. Section 1915(e)(1) confers the district court with the power to request that counsel represent a litigant who is proceeding in forma pauperis. Staats has never sought *in forma pauperis* status and, therefore, he does not qualify for counsel under § 1915. The Court will deny without prejudice to renew his request for counsel and the request for counsel filed on his behalf by Shankaras. (D.I. 3, 22)

With regard to Shankaras and Ayers, assuming solely for the purpose of deciding their requests that their claims have merit in fact and law, several of the *Tabron* factors militate against

12

granting their requests for counsel. A review of the Complaint indicates that the issues are not complex. In addition, to date, the filings demonstrate Plaintiffs' ability to articulate their claims and represent themselves. Finally, this case is in its early stages, there is no operative pleading and, as will be discussed, Plaintiff's claims will be severed. In light of the foregoing, the Court will deny the requests for counsel without prejudice to renew. Should the need for counsel arise later, one can be sought at that time. (D.I. 22, 48)

### B. Motion for Joinder

Non-Party Shahin, a female, moves to join as a plaintiff. (D.I. 7) She contends that the treatment Plaintiffs were allegedly subjected to is systemic in all Delaware correctional institutions, for men and women alike. (*Id.*) Shahin contends that she had a "similar experience in 2012 after her illegal arrest, illegal incarceration, beatings, torture, and denial of medical care at the Delores Baylor correctional facility in Wilmington, Delaware in August of 2012." (*Id.* at 1)

As previously discussed, under Rule 20(a), Plaintiffs may file a joint action if: (1) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action. Here, Shahin was not housed at the JTVCC, a correctional facility for men; nor was she housed in any correctional facility during the same time-frame as the events at issue in this litigation. She was not housed in correctional facility during a prison uprising. Moreover, her claim is time-barred based upon the applicable two-year statute of limitation. The motion will be denied. (D.I. 7)

### C. Motion to Amend

When Shankaras was incarcerated, he filed two motions for leave to file an amended complaint, with an attached proposed amended complaint. (D.I. 20, 37) The motions are identical.

13

They seek to add as defendants unknown Delaware and Maryland State Police, specify facts and claims as they relate to Plaintiffs, and properly state the roles of each Defendant. The proposed amended complaint only names Shankaras as a plaintiff and is signed only by him.

As discussed above, Plaintiffs will be given leave to amend. As discussed below, the claims of each Plaintiff will be severed. Therefore, the motions for leave to amend will be denied as moot.

### D. Severance

When Plaintiffs commenced this action, all of them were housed at the JTVCC. Since then, Staats has been transferred to SCI Albion in Pennsylvania, Ayers has been transferred to SCI Huntingdon in Pennsylvania, Shankaras has been released from prison, and Michaels has been transferred to SCI in Georgetown, Delaware. Only Haqq remains housed at the JTVCC. The need for all Plaintiffs to agree on all filings made in this action, and the need for all filings to contain the original signatures of all Plaintiffs, will lead to delay and confusion. Therefore, in order to avoid delay and endless confusion about what each individual Plaintiff's claims may be, and against whom, it is necessary to sever the case and permit each Plaintiff to state his own individual claim(s) based on the facts relevant to February 2017 prison uprising and how each Plaintiff was affected. *See e.g.*, *Sisneroz v. Ahlin*, 2009 WL 224899, at *1 (E.D. Cal. Jan. 29, 2009) (severing claims brought by seven civilly committed sexually violent predators objecting to conditions at state hospital and observing that "an action brought by multiple plaintiffs proceeding *pro se* in which the plaintiffs are detained presents procedural problems that cause delay and confusion")

As discussed above, the original Complaint fails to state claims upon which relief may be granted and contains frivolous claims. However, the Court finds it appropriate to allow amendment as to Counts I and II. Thus, the Court will order this case severed into five individual cases, each

14

with its own case number and title, and will grant a reasonable time for each Plaintiff who desires to go forward with his case to file an amended complaint in his own name.

## VI. CONCLUSION

For the above reasons, the Court will: (1) dismiss the Complaint as frivolous and for failure to state claims upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and § 1915A(b)(1); (2) dismiss with prejudice the claims raised by Ayers in Count II against May and Cupid, the medical negligence claims, and Counts III and IV; (3) dismiss Defendants CERT Team, May, and Cupid; (4) sever this case into five individual cases, each with its own case number and title, and grant time for each Plaintiff to file an amended complaint as to Counts I and II, consistent with this Memorandum Opinion; (5) deny without prejudice to renew the requests for counsel (D.I. 3, 22, 48); (6) deny Shahin's motion for joinder (D.I. 7); and (6) deny as moot Shankaras' motions for leave to amend (D.I. 20, 37).

An appropriate Order will be entered.